

**ORDERED in the Southern District of Florida on June 17, 2020.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

In re:

MIDTOWN CAMPUS PROPERTIES, LLC,

       Debtor.

_____/

Chapter 11

Case No. 20-15173-RAM

**SECOND INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION
(I) FOR AUTHORIZATION TO OBTAIN POSTPETITION SECURED
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364,
(II) TO GRANT ADEQUATE PROTECTION IN CONNECTION THEREWITH
PURSUANT TO 11 U.S.C. §§ 361 AND 507, AND (III) SCHEDULING A FINAL
HEARING UNDER BANKRUPTCY RULE 4001**

THIS MATTER came for hearing on **June 15, 2020 at 10:00 a.m.** (the "Second Interim

Hearing") upon the Emergency Motion (the "Motion") of Midtown Campus Properties, LLC

1

(the "<u>Debtor</u>") in the above captioned chapter 11 case seeking entry of a second interim order (this "<u>Second Interim Order</u>") and a Final Order (as defined below) authorizing, <u>inter</u> <u>alia</u>, the Debtor to:

(i)      obtain secured post-petition financing from BMI Financial Group, Inc., a Florida corporation (the "<u>DIP Lender</u>"),[1] in an aggregate amount of up to $5,200,000 pursuant to the terms and conditions of the Motion, the First Interim Order (as defined below), this Second Interim Order, the Term Sheet (as defined in the Motion), the Final Order (upon entry) and any promissory note and loan and security documents to be executed by the Debtor in connection with and consistent with the terms and conditions of such financing (collectively, the "<u>DIP Loan Documents</u>").

(ii)     borrow pursuant to the First Interim Order, this Second Interim Order and the DIP Loan Documents, one or more interim advances in an amount not to exceed $1,750,000 outstanding at any time during the Second Interim Period (as defined below) and pursuant to the Budget attached hereto as Exhibit "A" (the "<u>DIP Loan</u>") at an annual fixed interest rate of 9%, which interest shall be paid on a monthly basis in arrears from the proceeds of the DIP Loan.

(iii)     grant to the DIP Lender, pursuant to sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code and the terms of the DIP Loan Documents, but subject in all events to the Carve Out (set forth below), perfected and enforceable liens and security interests comprised of (a) a superpriority claim having priority over any and all other claims (b) pursuant to Section 364(c)(2) of the Bankruptcy Code, be

---

[1] The Debtor has disclosed and the Court notes that one of the equity members of the Debtor is affiliated with the DIP Lender.

secured by a perfected first-priority lien on all unencumbered now-owned or after-acquired Property (as defined below) of the Loan Parties that are not otherwise subject to any valid, perfected and non-avoided lien in existence on the Petition Date; and (c) pursuant to Section 364(c)(3) of the Bankruptcy Code, be secured by a perfected junior lien on all now-owned or after-acquired Property of the Borrower that are subject to any valid, perfected and non-avoided lien in existence on the Petition Date on and against on and against all tangible and intangible property of the Debtor wherever located, including, without limitation the following:

mean all real and personal property of the Debtor including, without limitation, (i) all cash, money, cash equivalents, deposit accounts, securities accounts, accounts, other receivables, chattel paper, contract rights, goods and inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles of any kind, rights to the payment of money, supporting obligations, guarantees, general intangibles, letter of credit rights, commercial tort claims, causes of action[2] and all substitutions, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (ii) all owned real property, all leased real property, all rents and leases from any real property interests, and all other proceeds of real property; (iii) subject to the entry of a Final Order, rights under Section 506(c) of the Bankruptcy Code and (iv) all proceeds of the foregoing. For the avoidance of doubt, the DIP Collateral shall include all the foregoing rights, property, claims, and interests, without regard as to whether such rights, property, claims, and interests came into the Debtor's estate, or otherwise arose, after the Filing Date.

(collectively the "Collateral") that is not otherwise subject of a prior valid, perfected and non-avoidable lien or security interest as of the Petition Date, (b) a junior priority valid, binding, enforceable lien and security interest, pursuant to

---

[2] The Debtor asserts that it has certain claims against Sauer, Incorporated ("Sauer"), including in respect of Sauer's payment and performance bond (the "Sauer Claims"). Sauer disputes that contention and does not believe any such claims exist. The Court is not making any determinations as to the existence and/or validity of the Sauer Claims.

section 364(c)(3) of the Bankruptcy Code, on and against the Collateral that is otherwise subject of a prior valid, perfected and non-avoidable lien or security interest as of the Petition Date, and (c) all proceeds and products of and from the Collateral, and all substitutions, renewals, improvements and replacements of any of the Collateral; and further including all proceeds and products of any of the foregoing Collateral, including without limitation, all insurance policies insuring the foregoing Collateral or any part thereof and proceeds of said insurance, and including unearned premiums (collectively, the "Proceeds")(the Collateral and the Proceeds are collectively referred to herein as "Post-petition Collateral"). Notwithstanding, anything in this Interim Order to the contrary, the Post-Petition Collateral shall not include (A) claims and causes of action available to the Debtor or the Debtor's bankruptcy estate through the exercise of the powers granted pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), (B) the proceeds of Avoidance Actions, or (C) any claims or causes of action that the Debtor or the Debtor's bankruptcy estate may have against the DIP Lender or any insider of the Debtor as defined in 11 U.S.C. §101(31).

(iv)    incur all of the obligations, liabilities and indebtedness under and in respect of the DIP Loan, including attorneys' fees and expenses of the DIP Lender (collectively, the "DIP Obligations") and pay all amounts contemplated to be paid thereunder;

(v)    use the proceeds of the DIP Loan in a manner consistent with the terms and conditions of this Second Interim Order, the DIP Loan Documents and in accordance with the Budget, solely for the purposes set forth in the Budget,

4

including for (a) the costs to complete construction of the Project (including hard costs, soft costs and marketing expenses); (b) the payment of certain professional fees and costs (including of the DIP Lender); (c) the payment of ground lease rent, (d) the payment of insurance, and (e) the payment of interest accrued under the DIP Loan;

(vi)     grant to the DIP Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, a super-priority administrative expense claim in respect of all DIP Obligations with priority over all administrative expenses, subject only to the Carve-Out (as defined below) and the other terms and conditions contained herein;

(vii)    vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Second Interim Order; and schedule a final hearing (the "<u>Final Hearing</u>") to consider entry of a final order (the "<u>Final Order</u>") granting the relief requested in the Motion on a final basis and approve the form of notice with respect to the Final Hearing.

On May 26, 2020, the Court entered its *Interim Order Granting Debtor's Emergency Motion (I) For Authorization To Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, And 364, (II) To Grant Adequate Protection In Connection Therewith Pursuant To 11 U.S.C. §§ 361 And 507, And (III) Scheduling A Final Hearing Under Bankruptcy Rule 4001* [ECF No. 47] (the "<u>First Interim Order</u>") granting the Motion on an interim basis and scheduling the Second Interim Hearing. At the Second Interim Hearing, the Debtor, with the consent of the DIP Lender, requested that the Court enter this Second Interim Order authorizing the Debtor to borrow pursuant to the terms hereof. The Court, having considered the Motion, the *Declaration*

*of Oscar A. Roger in Support of Chapter 11 Petition and First Day Motions* [ECF No. 15] (the "First Day Declaration") which was filed contemporaneously with the Motion, the First Interim Order and the objections filed in connection therewith,[3] the evidence submitted, adduced or proffered at the Second Interim Hearing, the notice of the Second Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(c) and 9014, and all objections, if any, to the interim relief requested in connection with this Second Interim Order having been withdrawn, resolved or addressed on the record by the Court, and it appearing to the Court that granting further interim relief and entering this Second Interim Order is necessary to avoid immediate and irreparable harm to the Debtor, its creditors and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition Date.    On May 8, 2020 (the "Petition Date"), the Debtor commenced this case (the "Case") by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court"). The Debtor is continuing in the management and operation of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] Sauer, Incorporated ("Sauer") filed *Sauer, Incorporated's Objection to Certain of the Proposed Terms of Debtor in Possession Financing* (the "Sauer Objection") [ECF No. 34].

B.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157 and 1334 and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of the Debtor's Case is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

C.     <u>No Committee Formation</u>.  No official committee of unsecured creditors has been appointed in the Case.

D.     <u>Notice</u>.  Good and adequate notice of the Second Interim Hearing and the relief requested in the Motion has been provided by the Debtor through the First Interim Order and as evidenced by the Certificate of Service filed in the Court on May 27, 2020 [ECF No. 50].  No other or further notice is or shall be required.

E.     <u>Debtor's Acknowledgements and Agreements</u>.  After consultation with its attorneys and financial advisors, the Debtor admits, stipulates, acknowledges and agrees that:

(i)     Until such time as all DIP Obligations are indefeasibly paid in full in cash (or otherwise satisfied according to such terms as may be mutually agreed among the Debtor and the DIP Lender), the Debtor shall not in any way prime or seek to prime the Post-petition Liens (as defined below) provided to the DIP Lender under this Second Interim Order by offering a subsequent lender or a party-in-interest a superior or <u>pari</u> <u>passu</u> lien or claim on the Post-petition Collateral (as defined below) or a claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(ii)     Without the prior express written approval of the DIP Lender, the Debtor shall not (i) file with the Bankruptcy Court any pleading or request to (A) limit, alter, modify, or terminate any provision of this Second Interim

Order, or any protection granted to DIP Lender hereunder, or (B) extinguish, subordinate or diminish any security interest, lien or claim of the DIP Lender, or (ii) seek, consent to, or join in the approval of any matter or any plan of reorganization which purports to do any of the things prohibited by this Second Interim Order.

F.    Findings Regarding the Post-Petition Financing.    The ability of the Debtor to finance its operations requires the use of the proceeds of the DIP Loan, absent which immediate and irreparable harm will result to the Debtor, its estate and creditors. In the absence of the DIP Loan, the continued operation of the Debtor's business would not be possible, and immediate and irreparable harm to the Debtor, its estate and creditors would occur. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or to maintain its property without the DIP Loan.    The relief requested in the Motion is therefore necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its property. The DIP Lender and the Debtor have negotiated at arms' length and in good faith regarding the DIP Loan to fund the continued operation of the Debtor's business during the interim period covered by this Second Interim Order.    Good and sufficient cause has been shown for the entry of this Second Interim Order. Among other things, the entry of this Second Interim Order is in the best interests of the Debtor, its creditors and its estate because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate shutdown of operations; (ii) meet its obligations in connection with continued construction of the Project, including the payment of work provided by those who perform work on the Project after the Petition Date,[4] insurance and

---

[4]    Nothing in this Interim Order compels Sauer to perform work without getting paid and nothing in this Order shall determine the rights of the Debtor and Sauer (or Sauer's bonding company) in respect of

ground lease rent; and (iii) pay necessary fees and expenses under the Bankruptcy Code and make payments authorized under other Orders entered by this Court; all in accordance with the Budget (as defined herein); thereby avoiding immediate and irreparable harm to the Debtor's estate.

G.    <u>No Credit Available on More Favorable Terms</u>.  The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain secured credit, allowable only under sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Loan Documents and this Second Interim Order. The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.    <u>Use of Proceeds of the DIP Loan</u>.  Proceeds of the DIP Loan shall be used in each case in a manner consistent with the terms and conditions of the DIP Loan Documents, and in strict compliance with the Budget solely for the purposes set forth in the Budget (as may be modified with the consent of the DIP Lender in its sole discretion and after notice and a hearing and approval by the Court), including among other things, for (a) the costs to complete construction of the Project (including payment for those who perform work on the Project after the Petition Date, hard costs, soft costs and marketing expenses); (b) the payment of certain professional fees and costs (including of the DIP Lender); (c) the payment of ground lease rent, (d) the payment of insurance, and (e) the payment of interest accrued under the DIP Loan.

I.    <u>Payment of Post-Petition Principal, Interest and Expenses</u>.  The Debtor is authorized to pay, and the DIP Lender is entitled to receive the costs and expenses of the DIP Lender in connection with the Chapter 11 Case and in accordance herewith.  The DIP Loan shall

---

any contracts between the Debtor and Sauer.

mature and become due and payable on the earlier of (i) on the date of the Final Hearing (as defined below) if the Final DIP Order has not been entered by the Bankruptcy Court on or prior to such date; (ii) the date the Bankruptcy Court orders the conversion of the bankruptcy case of the Debtor to a Chapter 7 liquidation, the dismissal of the bankruptcy case of the Debtor, or the appointment of a trustee; (iii) the occurrence of an Event of Default under the DIP Facility Documents; (iv) the sale of all or substantially all of the Debtor's assets; (iv) the effective date of the plan of reorganization and liquidation for the Debtor; and (v) 365 days after the Petition Date (the "Maturity Date"), subject to extension pursuant to the terms of a Final Order.  On the Maturity Date, all the DIP Obligations shall become due and payable in full, in cash, to the DIP Lender.

J.    Extension of Financing.  The DIP Lender has indicated a willingness to provide continued interim financing to the Debtor in accordance with this Second Interim Order and the DIP Loan Documents and subject to (i) the entry of this Second Interim Order, and (ii) findings by the Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith lender, and that the DIP Lender's claims, super priority claims, senior security interests and liens and other protections granted pursuant to this Second Interim Order and the DIP Loan will not be affected by any subsequent reversal, modification, vacatur or amendment of this Second Interim Order, the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.    Business Judgment and Good Faith Pursuant to Section 364(e).  (i) The terms and conditions of the DIP Loan and the DIP Loan Documents, and the fees and costs to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are

supported by reasonably equivalent value and consideration; (ii) the DIP Loan and this Second Interim Order were negotiated in good faith and at arms' length between the Debtor and the DIP Lender; and (iii) use of the proceeds to be extended under the DIP Loan will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

L.      Entry of this Second Interim Order. For the reasons stated above, the Debtor has requested immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

NOW, THEREFORE, on the Motion of the Debtor and the record before this Court with respect to the Motion, and with the consent of the Debtor and the DIP Lender to the form and entry of this Second Interim Order, based on the specific facts and circumstances of this case and for the reasons stated on the record, which are incorporated herein, good and sufficient cause appearing therefor,

IT IS ORDERED that:

1.      The Motion is granted in accordance with and limited to the terms and conditions set forth in this Second Interim Order and the DIP Loan Documents. If and to the extent the terms of this Second Interim Order are inconsistent with the terms contained in the Motion or in the Term Sheet, then the terms set forth in this Second Interim Order shall control.

2.      All objections to the Motion as it relates to the interim relief sought in this Second Interim and the entry of this Second Interim Order have been resolved by the provisions hereof or were addressed by the Court for the reasons stated on the record, which are incorporated herein by reference.

3.      Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Second Interim Order shall take effect immediately upon entry and shall

remain in effect until 11:59 p.m. (Prevailing Eastern Time) on July 8, 2020 (such period being referred to as the "Second Interim Period") , subject to being extended pursuant to the terms of a Final Order.

4.      The Debtor, the DIP Lender, and their respective advisors and employees have acted in good faith in negotiating, consenting, and agreeing to the DIP Loan as contemplated and provided by this Second Interim Order. The negotiation of the terms and provisions of this Second Interim Order has been conducted at arms' length, and such terms and provisions are fair and reasonable under the circumstances and reflect the Debtor's exercise of reasonable business judgment consistent with the Debtor's fiduciary duties.

5.      Nothing in this Second Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or its advisors or employees, any liability for any claims arising from the prepetition or post-petition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.

6.      Based on the findings set forth in this Second Interim Order and the reliance of the DIP Lender in good faith on the terms thereof, if any of the provisions of this Second Interim Order are hereafter modified, vacated or stayed by an Order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, security interest or priority authorized for the benefit of the DIP Lender hereunder that is granted or attaches prior to the effective date of such stay, modification or vacation, and any use of DIP Loan by the Debtor pursuant to this Second Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Second Interim Order.

7.      This Second Interim Order is without prejudice to the rights of the DIP Lender

to seek a modification of this Second Interim Order, including a request for additional adequate protection or the termination of the DIP Loan, after notice and hearing, including a hearing noticed on an emergency basis.   The DIP Lender has expressly reserved, and this Second Interim Order is without prejudice to, any and all rights and remedies of the DIP Lender, including the appropriateness of any adequate protection that may be proposed in connection with the DIP Loan after the Second Interim Period.

8.    The DIP Lender shall receive such protections and be entitled to such rights as are set forth in this Second Interim Order. The Debtor and all other relevant parties are expressly and immediately authorized, empowered and directed (i) to execute and deliver to DIP Lender the DIP Loan Documents in a form consistent with the terms of this Second Interim Order, (ii) to consummate the transactions described herein and therein and incur and perform on an interim basis the DIP Obligations in accordance with, and subject to, the terms of this Second Interim Order and the DIP Loan Documents, and (iii) to execute and deliver all instruments and documents which reasonably may be required or necessary for the performance by the Debtor under the DIP Loan and the creation and perfection of the Post-petition Liens described in and provided for by this Second Interim Order and the DIP Loan Documents.  The Debtor is hereby authorized to perform all acts, and subject to the provisions of this Second Interim Order, pay the principal, interest and other amounts described in this Second Interim Order and the DIP Loan Documents as such become due subject to entry of the Final Order, the Debtor shall reimburse the DIP Lender its, costs, attorneys' fees and other disbursements pursuant to the terms hereof.

9.    In order to enable it to continue to operate its business during the Second Interim Period, subject to the terms and conditions of this Second Interim Order, the DIP Loan Documents and the Budget (which Budget may not be materially amended or modified

during the Second Interim Period without the consent of the DIP Lender in its sole discretion and after notice and a hearing and approval by the Court), the Debtor is hereby authorized under the DIP Loan to borrow up to the amount of $1,750,000 as set forth in the Budget during the Second Interim Period. Notwithstanding any provision of its certificate or articles of incorporation, bylaws, operating agreement, partnership agreement, membership agreement, certificate of formation, certificate of limited partnership, regulations, or comparable governing documents to the contrary, the Debtor is authorized to, and each officer, member, manager, partner, or other comparable authorized signatory of the Debtor is hereby authorized to pledge, mortgage and grant security interests in its assets to secure such DIP Obligations, and to execute and enter into any and all of the DIP Loan Documents and all other documents and transactions necessary to implement and effectuate the terms of the DIP Loan, this Second Interim Order and the DIP Loan Documents. Given the Debtor's urgent need to fund expenses attendant to its operations, the DIP Lender may at the request of the Debtor make advances directly to vendors, and any other third parties, with all such advances having been made for the benefit of the Debtor, being deemed part of the DIP Loan and entitled to the protections accorded by this Second Interim Order. In the event the DIP Lender makes such direct advances, then the Debtor shall reflect such advances and related payments on its DIP Reports, which disbursements shall be subject to US Trustee fees. Any such advances or reimbursements must be in accordance with the Budget and evidence of advancing of funds and payment of the expenses must be provided to the DIP Lender.

10.     The proceeds of the DIP Loan (net of any amounts used to pay fees, costs and expenses under this Second Interim Order or the DIP Loan Documents) shall be used, in each case in a manner consistent with the terms and conditions of this Second Interim Order and the

DIP Loan Documents, and in accordance with the Budget limited pursuant to this Second Interim Order to the Second Interim Period.

11.    Effective immediately upon the entry of the Second Interim Order and except as set forth herein, the DIP Lender is hereby granted, pursuant to subsections 364(c)(2) and (c)(3) of the Bankruptcy Code, perfected and enforceable liens and security interests (collectively, the "Postpetition Liens") comprised of (a) a first priority valid, binding, enforceable priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on and against the Post-petition Collateral that is not otherwise subject of a prior valid, perfected and non-avoided lien or security interest as of the Petition Date, and (b) a junior priority valid, binding, enforceable lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on and against the Post-petition Collateral that is otherwise subject of a prior valid, perfected and non-avoided lien or security interest as of the Petition Date; provided, however, that the Post-petition Liens shall not encumber: (a) Avoidance Actions, (b) the proceeds of Avoidance Actions, or (C) any claims or causes of action that the Debtor or the Debtor's bankruptcy estate may have against the DIP Lender or any insider of the Debtor as defined in 11 U.S.C. §101(31)(the "Insider Claims").  The Postpetition Liens shall at all times be subject to the Carve Out.  In addition and notwithstanding anything herein to the contrary, the Postpetition Liens shall be junior to the rights of any mechanics' liens (a/k/a construction liens) existing on the Petition Date and shall not impact or prime the mechanics' lien rights of Sauer or any other mechanics' lienor to perfect any such liens, including their rights under 11 U.S.C. §546(b)(1) and applicable state law in respect of the perfection of any such liens, which are expressly preserved.

12.    Except as set forth in this Second Interim Order and the Carve Out, the Postpetition Liens granted pursuant to this Second Interim Order shall be senior in priority and

shall not be made subject to, or pari passu with any prepetition lien or security interest by any court order heretofore or hereafter entered in the Case and shall be valid and enforceable against any trustee or examiner appointed in the Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Case"), and/or upon the dismissal of the Case; provided, however, that this provision shall not apply to any bankruptcy case filed by the Debtor in the future after the closing of this Case. The Post-petition Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code or challenge on any basis.

13.    Except with respect to the Carve-Out during the Second Interim Period pending the entry of a Final Order, all DIP Obligations shall be an allowed super priority administrative expense claim (the "DIP Super Priority Claim" and, together with the Post-petition Liens, the "DIP Protections") with priority in the Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code; provided, however, that the proceeds of Avoidance Actions or Insider Claims shall not be used to pay the Super Priority DIP Claim. Except in respect of the administrative expense claims provided for in the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or pari passu with

16

the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.  Notwithstanding anything herein to the contrary, the DIP Super Priority Claim shall be junior to any and all valid, perfected and non-avoidable liens and security interests that existed as of the Petition Date (as clarified by the terms of this Second Interim Order, including as to mechanic's liens set forth in  paragraph 11 above).

14.    The Debtor is authorized to use proceeds of the DIP Loan in accordance with the Budget to pay such compensation and expense reimbursements of professional persons retained by the Debtor (the "Debtor Professionals") as may be awarded by the Court pursuant to Section 328, 330 or 331 of the Bankruptcy Code (the "Professional Expenses"). For so long as an Event of Default does not exist, the DIP Lender shall advance the amounts set forth in the Budget, and allocated for the fees and expenses of the Debtor Professionals as applicable; said funds shall be advanced to and segregated and escrowed in an escrow account maintained by counsel for the Debtor for payment to the Debtor Professionals pursuant to the Budget, in accordance with the procedures which may be approved by the Court for the payment of professionals (the "Professional Expense Escrow"). Funds deposited in the Professional Expense Escrow shall be available and may be used by the Debtor solely for the payment of the Professional Expenses. Neither the Debtor nor any creditor of the  Debtor (except for the DIP Lender) shall have a claim or interest in the funds on deposit in the Professional Expense Escrow, other than the entitlement of the Debtor or a successor trustee to receive; (i) any balance remaining in the Professional Expense Escrow after payment in full of (a) the Professional Expenses that have accrued and that are allowed by final order of the Court, and  (b) the DIP Loan Obligations.

15.    The Postpetition Liens and the DIP Super-Priority Claim, to the extent granted hereunder to and for the benefit of the DIP Lender, respectively, shall be subject and subordinate

to the following expenses (collectively, the "Carve Out"):

      a.  the claims of the respective retained professionals of the Debtor in this Case, (collectively, the "Retained Professionals") for fees and expenses incurred at any time on and after the Petition Date and prior to the delivery of a Carve-Out Trigger Notice[5] up to the amount set forth for each professional in the Budget; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed, if and as applicable, on a final basis by this Court under sections 330 or 331 or allowed pursuant to the Court-approved terms applicable to the retention of the Debtor's Retained Professionals (the "Pre-Termination Date Expenses" and the permitted amount thereof, the "Pre-Termination Date Amount");

      b.  the claims of the Retained Professionals for fees and expenses which were incurred on and after the delivery of a Carve-Out Trigger Notice; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed, if and as applicable, on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code, and do not exceed $50,000 in the aggregate for all of the Retained Professionals, (such fees and expenses described in this clause  the  "Post-Termination Date Expenses" and the permitted amount thereof, the "Post-Termination Amount" and, together with the Pre-Termination Date Amount, the "Professional Fees");

      d.  the unpaid fees and expenses of the United States Trustee and the Clerk of the Court (or any agent thereof) pursuant to 28 U.S.C. § 1930(a)(6) or otherwise; and

      e.  unpaid operating expenses up to the amount set forth in the Budget for such expenses that were incurred prior to the delivery of a Carve-Out Trigger Notice, solely to the extent that such claims would have been authorized  to be paid by the Debtor prior to such date, pursuant to the Budget, if the Carve-Out Trigger Notice had not been delivered.

    16.     The following events shall each constitute  an event of default  hereunder,

(collectively, the "Events of Default"):

      a.  the violation of or failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order (including in respect of the Budget);

      b.  the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Post-petition Collateral

---

[5] As used herein, "Carve-Out Trigger Notice" means, upon the occurrence of an Event of Default, a written notice delivered by the DIP Lender to counsel for the Debtor expressly stating that the Carve-Out has been invoked and terminating the right of the Debtor to pay professional fees incurred after such date outside of the Carve-Out. Upon receipt of the Carve-Out Trigger Notice, the Debtor shall provide immediate notice by electronic mail to the professionals retained in the Case informing them that a Carve-Out Trigger Notice has been received and further advising them that the Debtor's ability to pay professional fees incurred subsequent to the date thereof is subject to the Carve-Out.

which is equal or senior to any security interest, mortgage or other lien of the DIP Lender, or (ii) entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein;

    c.  the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Post-petition Collateral, or (ii) with respect to any lien of or the granting of any lien on any Post-petition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

    d.  the reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of this Second Interim Order;

    e.  dismissal of the Case or conversion of the Case to chapter 7 case, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

    f.  the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the DIP Lender, in its sole discretion;

    g.  the Debtor's failure to obtain entry of a Final Order by July 8, 2020;

    h.  the granting of any motion providing for reconsideration, stay, or vacatur of this Second Interim Order; or (1) the Debtor shall assert in any pleading filed in any court that any material provision of this Second Interim Order is not valid and binding for any reason, or (2) any material provision of this Second Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of the DIP Lender;

    i.  the failure to satisfy the Milestones as set forth in the Term Sheet; and

    j.  the Debtor exceeds the Permitted Variances without the express written consent of the DIP Lender.

17.    Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Lender may declare a termination of the obligations to advance any additional amounts under the DIP Loan (any such declaration shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by e-mail or facsimile (or other electronic means) contemporaneously to counsel to the Debtor, counsel to any Statutory

Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). On the Termination Declaration Date the DIP Lender shall not be obligated to advance any additional funds under the DIP Loan. Within seven (7) business days after the Termination Declaration Date (the "Remedies Notice Period"), the Debtor and/or the Statutory Committee shall be entitled to seek an emergency hearing with the Court seeking an emergency determination of whether an Event of Default has occurred, with the rights and objections of all parties reserved with respect thereto. Following the issuance of a Termination Declaration and notwithstanding anything herein to the contrary, the DIP Lender shall not exercise any rights and/or remedies at law or in equity in respect of the DIP Loan without first obtaining an Order of this Court upon motion and a hearing. To that end, the DIP Lender shall have the right to file an emergency motion with the Court during the Remedies Notice Period, which the Court shall consider on an emergency or expedited basis, seeking, among other things, relief from the automatic stay applicable to the DIP Lender so as to be able to exercise its rights and remedies at law or in equity to satisfy the DIP Obligations, the Superpriority Claims, and any other obligation under this Second Interim Order or the DIP Loan Documents. Pending further Order of the Court, the DIP Lender shall not have any control over the Sauer Claim, including in respect of the filing, prosecution and/or settlement of the Sauer Claim.

18. This Second Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Postpetition Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement)

to validate or perfect the Post-petition Liens, or to entitle the DIP Lender to the priorities granted herein.  Notwithstanding the foregoing, the Debtor and the DIP Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge or dispute or subordination, at the time and on the date of entry of this Second Interim Order.  Upon the request of the DIP Lender, without any further consent of any party, the Debtor is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the Post-petition Liens and claims.  The Debtor shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the Post-petition Liens and claims.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  A certified copy of this Second Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Second Interim Order for filing and recording. The DIP Lender, in its discretion, may also

file a photocopy of this Second Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and is directed to file or record such copy of this Second Interim Order.

19.      Nothing herein shall be construed as consent to the allowance of, or obligate the DIP Lender to pay, any professional fees or expenses of the Debtor, any Statutory Committee or of any person or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget. The DIP Lender reserves the right to object to any request or application for the payment of professional fees that may be submitted or filed in the Case.

20.      No costs or expenses of administration that have been or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Lender or the Post-petition Collateral

21.      Neither the proceeds from DIP Loan nor the Carve Out funds may be used: (a) in connection with or to finance, directly or indirectly, in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Lender, (ii) invalidating, setting aside, avoiding, recharacterizing or subordinating, in whole or in part, the obligations under the DIP Loan or this Second Interim Order, (iii) for monetary, injunctive or other affirmative relief against the DIP Lender, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and/or remedies under this Second Interim Order, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Lender upon any of the Collateral or Post-petition Collateral; (b) for objecting to, contesting, or interfering with in

any way the DIP Lender's enforcement or realization upon any of the Post-petition Collateral once an Event of Default has occurred; (c) for selling or otherwise disposing of the Postpetition Collateral without the consent of the DIP Lender; (d) for objecting to or challenging in any way the claims, liens, or interests (including interests in the Post-petition Collateral) held by or on behalf of the DIP Lender; (e) for asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions, against the DIP Lender; (f) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any other rights or interests of DIP Lender; or (g) for preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and remedies granted under this Second Interim Order.

22.    All net proceeds of the sale or other disposition of any Post-petition Collateral outside the ordinary course of business, prior to the occurrence of an Event of Default, shall be paid to the DIP Lender pending the application thereof to the DIP Obligations according to the provisions of this Second Interim Order and subject, in all respects, to the Carve Out.

23.    The DIP Lender has acted in good faith in connection with this Second Interim Order and its respective reliance on this Second Interim Order is in good faith.  Based on the findings set forth in this Second Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan contemplated by this Second Interim Order, in the event any or all of the provisions of this Second Interim Order are hereafter modified, stayed, amended or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens, claims or priority authorized or created hereby.

Notwithstanding any such modification, amendment or vacatur, any claim or lien granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment or vacatur of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Second Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim or lien.  Since the loan made pursuant to the DIP Loan Documents is made in reliance on this Second Interim Order, the obligations owed to the DIP Lender prior to the effective date of any stay, modification or vacation of this Second Interim Order cannot, as a result of any subsequent order in the Case or in any Successor Case, be subordinated, lose its lien priority or super priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Second Interim Order and/or the DIP Loan Documents.

24.    All costs and expenses of the DIP Lender in connection with the Case, including, without limitation, legal, accounting, and financial advisory fees, will be paid by the Debtor.  The DIP Lender shall provide to the U.S. Trustee, counsel to the Debtor and counsel to the Statutory Committee (the "Fee Notice Parties"), on a monthly basis, the total amount of professional fees and expenses described in this subsection that are incurred per calendar month in the Case, upon request, along with summary invoices relating to such fees and expenses.  Under no circumstances shall professionals for the DIP Lender be required to comply with the U.S. Trustee fee guidelines.  In the event any of the Fee Notice Parties object to such fees or expenses, or any portion thereof, such objecting Fee Notice Party shall send written notice of such objection to the DIP Lender within five (5) days of receipt of the invoice.  Any unresolved objection shall be resolved by the Court after notice and hearing. Absent any objections, the Debtor shall pay

such requested fees and expenses within five (5) days of receipt of the invoices.

25.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to implement this Second Interim Order, including, without limitation, to (1) permit the Debtor to grant the Postpetition Liens and to incur all liabilities and DIP Obligations to the DIP Lender hereunder, and (2) authorize the DIP Lender to retain and apply payments hereunder in accordance with the provisions of this Second Interim Order.

26.    The Debtor shall indemnify and hold harmless the DIP Lender, and its officers, directors, fiduciaries, employees, agents, advisors, attorneys and representatives from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, out-of-pocket fees and disbursements of counsel) in connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility or the transactions contemplated in this Second Interim Order.

27.    The DIP Lender may, but is not required to file proofs of claim in the Case or any Successor Case.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in the Case or any Successor Case shall not apply to the DIP Lender.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Case or Successor Case to the contrary, the DIP Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Case or any Successor Case.

28.    The Court shall conduct a final hearing (the "Final Hearing") on the Motion on **July 8, 2020, at 10:00 a.m.** (Eastern Time).  The Final Hearing will be conducted by video conference using the services of Zoom Video Communications, Inc.  For instructions regarding

the video conference, please refer to the *General Procedures for Hearings By Video Conference* on Judge Mark's web page on the Court's website, https://www.flsb.uscourts.gov/judges/judge-robert-mark.   To register for the video conference, click on the following link or manually enter the following link in a browser:

https://us02web.zoom.us/meeting/register/tZYod-qqpzgsHtNN-XZ8O5jo6hRwuvyiftOz

29.    The general public is invited to listen to the hearing by telephone. Any person wishing to listen to the hearing by telephone may contact the Court's Courtroom Deputy, Jackie Antillon, by electronic mail at Jackie_Antillon@flsb.uscourts.gov to obtain dial-in instructions.

30.    This Court has and will retain jurisdiction to enforce this Second Interim Order according to its terms.

###

**SUBMITTED  BY:**
Paul J. Battista, Esq
Genovese Joblove & Battista, P.A.
Counsel to Debtor-in-Possession
100 S.E. Second Street, 44th Floor
Miami, FL 33131
(305) 349-2300 (p)
(305) 349- 2310 (f)
pbattista@gjb-law.com

**Copies Furnished to:**
Paul J. Battista, Esq.
[Attorney Battista is directed to serve a conformed copy of this Order on all parties in interest]