UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

IN RE:

MIDTOWN CAMPUS PROPERTIES, LLC,

   Debtor.
_____/

Case No. 20-15173-RAM

Chapter 11 Case

**SAUER, INCORPORATED'S EMERGENCY MOTION FOR AUTHORIZATION TO IMMEDIATELY STOP WORKING ON THE PROJECT**

*(EMERGENCY HEARING REQUESTED)*

**BASIS FOR EMERGENCY CONSIDERATION**

*Sauer requests an emergency hearing on this Motion to be heard as soon as possible because of the Debtor's failure to pay Sauer on its Pay Application by the close of business on Wednesday, June 17, 2020 (or thereafter) as required by the Court's Order Granting in Part Sauer's Motion to Set Deadline or Alternatively, to Grant Stay Relief (D.E. 81).*

Creditor Sauer, Incorporated ("Sauer"), in accordance with this *Court's Order Granting in Part Sauer's Motion to Set Deadline or Alternatively, to Grant Stay Relief* (the "Order")(D.E. 81), hereby seeks the entry of an Order authorizing Sauer to immediately stop working as the General Contractor on the Project because of the Debtor Midtown Campus Properties, LLC's ("Debtor") failure to pay the amounts requested in the underlying Pay Application No. 33 (the "Pay Application"), as required by the Order. In support thereof, Sauer states as follows:

1. The applicable factual background, with which the Court is quite familiar, is set forth in *Sauer, Incorporated's Expedited / Emergency Motion to Set Expedited Deadline for Debtor to Assume or Reject its Executory Contract, or in the Alternative, for Relief from the*

*Automatic Stay to Exercise its Contractual Rights* (the "Motion") (D.E. No. 60), which is incorporated herein by reference.[1]

2. The Court conducted a hearing on the Motion and the Response on June 15, 2020 at 10:00 a.m. Later that day, the Court entered the Order which included, in pertinent part, the following:

> The Court denies Sauer's *ore tenus* request for immediate authorization to stop work on the project. However, Sauer and its subcontractors may stop work if directed to do so by the Debtor. Moreover, as set forth in paragraph 8 below, Sauer may file an emergency motion to authorize it to stop working on the project **if, by 5:00 p.m. on June 17, 2020, the Debtor has not paid Sauer and its subcontractors for their postpetition work as requested in the $236,000 pay application (the "Pay Application") described at the hearing subject to paragraph 7 below.**

Order, ¶6 (emphasis added).

3. Paragraph 7 of the Order provided:

> The Debtor may withhold payment of portions of the Pay Application if the Debtor's architect raises an objection. **The Debtor may not withhold payment based on contract disputes** or assert any setoff against the amounts requested based on the Debtor's allegations of breach of contract by Sauer or its subcontractors.

Order, ¶7. As the Court recalls, at the hearing, the Debtor's principal, Oscar Roger, advised the Court that based on pre-petition disputes between the parties and the Debtor's contention that the post-petition stucco work was to fix problems caused pre-petition by Sauer or the stucco subcontractor, the Debtor disputed paying Sauer for any of its post-petition fees under the

---

[1] In response to the Motion, the Debtor filed *Debtor's Response and Objection to Sauer, Incorporated's Expedited / Emergency Motion to Set Expedited Deadline for Debtor to Assume or Reject its Executory Contract, or in the Alternative, for Relief from the Automatic Stay to Exercise its Contractual Rights* (the "Response")(D.E. 76).

Completion Contract or amounts payable for stucco work.[2] The Court specifically rejected those contentions as a basis to withhold payment to Sauer for post-petition work, both at the hearing and in the Order.

4. Finally, the Order provided that in the event that Sauer had not been paid the amounts requested by 5:00 p.m. on June 17, 2020, subject to the reductions authorized by the Order, then Sauer was authorized to file an emergency motion on Thursday, June 18, 2020 seeking authorization to stop work and the Court would conduct an emergency hearing on Friday, June 19, 2020 at 10:00 a.m. *Id*. at ¶8. The Order made clear that copies of the Order were served on counsel for Sauer, the Debtor, and the DIP Lender (*i.e.* Luis Salazar).

5. Following the Court's entry of the Order, on the morning of Tuesday, June 16, 2020, counsel for Sauer and the Debtor had a telephone call to discuss the issues raised in the Order, including the Payment Application and the transition process.

6. On Tuesday, June 16, 2020, at 4:08 p.m., counsel for the Debtor emailed counsel for Sauer, and for the first time since Sauer's submission of the Payment Application on June 8, 2020, shared specific concerns about the Pay Application for resolution. A series of emails followed, in which respective counsel for Sauer and the Debtor tried to resolve three issues raised by the Debtor.

---

[2] Instead, based on a review of the Pay Application, Mr. Roger advised the Court that the Debtor would have no problem paying $65,000.00 of the Pay Application, which is the amount due to Sauer's HVAC consultant as stated on the Pay Application.

7. As a result of those discussions, Sauer agreed to a small reduction for a portion of the amounts that were payable for Sauer's fee under the Completion Contract,[3] as well as a small reduction in the amount attributable to work provided by a shoring subcontractor. The only remaining issue at that time was the calculation as to the reduction for the shoring subcontractor, which was only a difference of approximately $1,000.00.

8. In fact, at 4:12 p.m. on Wednesday, June 17, 2020, Paul Battista, counsel for the Debtor, sent both of Sauer's undersigned counsel an email indicating that of the $236,776.27 amount set forth in the Pay Application, the total for the Pay Application (based on the reduced amounts as calculated by Debtor) was $224,435.26. More importantly, Mr. Battista stated as follows: "We have calculated – based on our email exchanges – **the following amount that we are requesting today from our DIP lender for Pay App 33**." (Emphasis added). The amount in question was $224,435.26.

9. At 7:35 p.m. on June 17, 2020, Callie Waers, co-counsel for Sauer, sent Mr. Battista a follow up email confirming that except for a small discrepancy with respect to the shoring subcontractor, the amounts in Mr. Battista's 4:12 p.m. email were correct.[4]

10. On June 18, 2020, at 7:29 a.m., Mr. Battista sent Sauer's counsel an email advising that the Debtor believed that the number in its calculation was correct, and would provide the detailed calculation later that morning when he had time.

11. In response, Sauer's undersigned counsel sent an email to Mr. Battista at 9:43 a.m. on June 18, 2020 advising Mr. Battista that the parties should be able to get the issue as to the

---

[3] Sauer agreed to a reduction in the amount of $10,927.06 from the Payment Application to take into account that the underlying period for the application was three (3) days short of a full month.

[4] By Sauer's calculation, the amount of the payment should be $225,849.21.

4

shoring subcontractor figured out, and to send along the detailed calculation. At 2:02 p.m. on June 18, 2020, Mr. Eaton sent Mr. Battista another email asking that he confirm that the Debtor sent the draw request on June 17, 2020 to fund the amount of $224,435.26, and to confirm that the such amount would be paid to Sauer by the close of business on June 18, 2020. If so, Sauer's counsel advised Mr. Battista that Sauer would not file an emergency motion while the parties tried to figure out the difference on the reduction for the shoring subcontractor.

12. Unfortunately, no response from Debtor's counsel was sent to Mr. Eaton's two emails. Instead, at 2:45 p.m. on June 18, 2020, the Debtor's architect (*i.e.* PGAL Architects) sent a letter to Sauer indicating that the architect was approving the payment of only $65,000.00 – the exact same amount that Mr. Roger told the Court at the June 15, 2020 hearing the Debtor would have no problem paying.

13. The letter from PGAL Architects is dated June 18, 2020, and asserts that the Payment Application demonstrates that Sauer is only entitled to compensation for HVAC-related work because, among other things, some line items exceeded 100% completion despite not being complete on site. As reflected on Payment Application 33, the entire Project is 106% complete. Completion percentage is nothing more than the money expended as a portion of the contract sum. All relevant parties are aware that the Project is not finished, and that the completion percentage does not reflect the current state of the Project; it reflects pre-petition disputes between Sauer and the Debtor.[5]

---

5    Sauer previously submitted Change Order 4 to the Debtor, seeking to increase the contract price by $5,661,148.87 (net increase after $1,225,994.44 in deductive credits to the Debtor) based on work, some already approved and completed, necessary to finish the Project. The Debtor denied Change Order 4, and the contract sum upon which the completion percentages are based remained unchanged. The Debtor itself, acknowledges in its Response that it believes it is owed deductive change orders, which would alter contract sum by reduction. *See* D.E. 68 at ¶ 5. Accordingly,

14. Ms. Waers immediately reached out to Mr. Battista, because the letter from the architect was completely inconsistent with the representations that had been made by Mr. Battista in his earlier email as to the amount to be paid to Sauer, and for which a funding request was being made.

15. Mr. Battista responded by advising Ms. Waers that notwithstanding what was in the architect's letter, "we will be paying the amount that I outlined below, not the amount certified by the architect." However, when Mr. Battista was asked if the $224,435.26 amount would be paid by the end of business today, *i.e.* on June 18, 2020, he could not say for sure.[6] Instead, Mr. Battista only advised that the loan request had been made from the DIP Lender on Wednesday, June 17, 2020, and the DIP Lender had not yet funded it. Mr. Battista indicated that they would follow up and see when the funding would be expected.

16. At 4:46 p.m. on June 18, 2020, Mr. Battista also sent Sauer's counsel a copy of the email that the Debtor had submitted to the DIP Lender that included its draw requests. In that email, Mr. Battista advised that the Debtor needed to provide the DIP Lender with some additional lien releases "for last week's draw," and indicated that when the Debtor paid Sauer, the Debtor would "need from Sauer and the subs in question similar lien releases as I understand is

---

both parties acknowledge that the contract sum should be altered, even if they dispute in what manner.

6   However, Mr. Battista, did not answer the question that was posed to him, after receipt of the architect's letter, namely, to confirm that the architect's letter would not be used as any type of offset for future Pay Applications for post-petition work that Sauer has not yet submitted.

customary." This was the first time that the Debtor had noted any type of issue with respect to lien releases and payment on the Pay Application.[7]

17. Because Mr. Battista had represented that the Debtor had made a request from the DIP Lender to fund the amount of $224,435.26, and because Sauer anticipated that such amount would be paid on Friday, June 19, 2020,[8] Sauer did not file an emergency motion with the Court asking for a hearing on Friday June 19th at 10:00 a.m. as provided in the Order.

18. On the morning of Friday, June 19, 2020, Sauer's counsel wrote to Mr. Battista asking that he please keep Sauer advised as to the status of the funding from the DIP Lender and payment to Sauer. Mr. Battista advised that the DIP Lender had indicated that they were unable to open the attachments that contained the draw request, and those had been resent on the morning of June 19, 2020.[9] In addition, Mr. Battista asked whether Sauer had partial lien releases that can be provided when the Debtor paid Sauer the amounts owed as he needed to know that those were ready to be delivered.

19. At 12:02 p.m. on June 19, 2020, Sauer's undersigned counsel advised Mr. Battista that "Sauer will provide the partial lien release, and is checking on the status of those from the Subs as well." Mr. Battista responded: "Thank you. We will need those when we pay Sauer as the lender will not advance any further funds to us without them."

---

[7] Prior to the Petition Date, when payments on a particular pay application were made to Sauer, Sauer submitted the lien releases to the Debtor for the **prior** month's payment, thereby assuring payment was received before releasing its rights to assert a lien for nonpayment.

[8] Mr. Battista advised that the DIP lender had not objected to the amount requested by the Debtor for payment. And, while he did not control the DIP Lender, the Debtor expected funding the next day, *i.e.* Friday, June 19, 2020.

[9] Sauer's IT department was able to open the attachments.

20.     At 3:53 p.m. on June 19, 2020, Sauer's undersigned counsel sent the DIP Lender's counsel (Luis Salazar) an email asking about the status of the DIP Lender's payment to the Debtor to ensure payment to Sauer of the $224,436.26 amount by the close of business because Sauer was concerned about the continued delays. Mr. Salazar advised that he was reaching out to his client and was awaiting a response.

21.     At 4:11 p.m., Mr. Battista wrote that it may be too late to wire funds to Sauer once received by the Debtor because it was after 4:00 p.m.  And, the Debtor needed Sauer's wire instructions.  Moreover, Mr. Battista advised that "we will need the lien releases before we can wire the money."  Despite (a) Sauer's submission of the Pay Application on June 8, 2020, and (b) the Court's Order requiring that **payment** be made to Sauer on or before June 17, 2020, this was the first time that the Debtor advised that the Debtor's receipt of partial lien releases was required **before** Sauer would be paid on its Pay Application.  Nowhere in the Order did the Court require the submission of lien releases as a condition precedent to any payment to Sauer, nor was it even raised at the hearing.

22.     At 4:56 p.m. on June 19, 2020, Mr. Battista advised that he had just learned that the Debtor had received the wired funds from the DIP Lender.  In response, Sauer's undersigned counsel advised Mr. Battista that Sauer would provide its partial lien waiver, and would get lien waivers from the subcontractors.  Mr. Battista advised that if this was acceptable to the DIP Lender, "we will set the wire to go first thing Monday."[10]  Mr. Salazar advised that this was acceptable to the DIP Lender.

---

10      Even though the Debtor already had Sauer's wiring information, Sauer's undersigned counsel sent Mr. Battista an email with them on Friday, June 19th.

23. In light of the representations by Mr. Battista that the wire to Sauer would go out first thing Monday morning, and Mr. Salazar indicating the DIP Lender was ok with lien waivers being provided after payment to Sauer, Sauer did not file an emergency motion with the Court on Friday, June 19th.

24. Notwithstanding Mr. Battista's representation that the wire would be sent to Sauer first thing Monday morning, as of 10:59 a.m. on June 22, 2020, Sauer had not yet received the wired funds from the Debtor. For that reason, Sauer's undersigned counsel sent Mr. Battista and Mr. Salazar an email at 11:04 a.m. on June 22, 2020 asking about the status of the payment and an ETA for the wire.

25. Mr. Battista responded at 11:40 a.m., and advised that he had spoken with client this morning, and was told that they were going to the bank "first thing to initiate the wire." He added that "there is no issue with us sending the wire." Sauer's undersigned counsel advised Sauer had followed up with their bank and still had not received payment. Moreover, we advised Mr. Battista that Sauer expected to receive the payment by 12:30 pm. Mr. Battista indicated that according to his client, the wire was in the bank's "wire room" and had been sent or was being sent now, and they were trying to obtain a federal wire confirmation number.

26. Unfortunately, as of 12:450p.m., Sauer has still not received a written wire confirmation number from Debtor's counsel as to the status of the wire, or confirmation that the amounts in the Pay Application that the Debtor said would be paid, and which were required by the Order to be paid by 5:00 p.m. on Wednesday, June 17, 2020, had been received by Sauer's bank. And, notwithstanding the representations by Mr. Battista, Sauer still does not know when the amount of $224,435.26 will actually be paid. At no point at the hearing on Monday, June 15, 2020, did either counsel for the Debtor or the DIP Lender advise Sauer or the Court of any of the

objections, conditions, or circumstances that have since that time impeded their compliance with the Court's Order.

27. In addition, Sauer has no assurances that any of the additional amounts it is owed for post-petition work will be paid, or whether the architect will once again object based upon pre-petition disputes that the parties have, like it did with its June 18, 2020 letter in connection with the Pay Application. As to Pay Application 33, the Debtor's draw request was submitted prior to the architect's letter, but the pattern of delays and objections exhibited thus far to post-petition work evidences the ongoing risk that Sauer faces in obtaining payment for the post-petition work of Sauer and its subcontractors.

28. Under the circumstances, and because of the failure of the Debtor (and the DIP Lender) to comply with the Order, Sauer respectfully requests that it be permitted to immediately stop work on the Project, as permitted under the Order. In addition, Sauer requests that the Debtor and the DIP Lender be directed to comply with the Order and immediately remit to Sauer the amount of $224,435.26, and all amounts requested by Sauer in any further pay applications for the periods after that contained in the Pay Application.

WHEREFORE, Sauer, Incorporated requests that the Court enter an Order authorizing Sauer and its subcontractors to immediately stop working on the Project, that the Debtor be required to immediately pay Sauer the amount of $224,435.26 and all additional amounts set forth in any future pay applications that Sauer submits, and granting Sauer such other and further relief as the Court deems necessary and proper.

Dated: June 22, 2020

Respectfully submitted,
**SHAWDE & EATON, P.L.**
1792 Bell Tower Lane
Weston, Florida 33326
Telephone: (954) 376-3176

By: */s/ John D. Eaton*
    John D. Eaton
    Florida Bar No. 861367
    jeaton@shawde-eaton.com

**and**

Callie E. Waers
(pro hac vice admission)
**MARTIN HILD P.A.**
555 Winderley Place, Suite 415
Maitland, FL 32751
Telephone: (407) 660-4488
Email: cew@martinhild.com

*Attorneys for Creditor Sauer, Incorporated*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd day of June, 2020, a true and correct copy of the foregoing Motion was served via CM/ECF transmission on all parties currently on the list to receive e-mail notice/service for this case.

By: */s/ John D. Eaton*
    John D. Eaton